UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.

| | |
|---|---|
| MARISSA VOLLER, JOHN VOLLER, and KATHLEEN VOLLER, Plaintiffs<br><br>v.<br><br>BRIDGEWATER-RAYNHAM REGIONAL SCHOOL DISTRICT, RONALD P. GERHART, STEPHEN G. HEASLIP, DAVID A. CHUCKRAN, BETTE A. BRIDGES, a/k/a BETTE A. BRIDGES-BRODY, and WILLIAM R. BARBER, Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**05 10933 MLW**

RECEIPT # _____ 84107
AMOUNT $ 250.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. CMG
DATE 5-6-05

# VERIFIED COMPLAINT

## INTRODUCTION

This is an action for money damages against the Bridgewater-Raynham Regional School District, its former Superintendent, and former employees of the Bridgewater-Raynham Regional High School for personal injuries sustained by Plaintiff Marissa Voller as a result of the Defendants' actions and inaction, including but not limited to their negligent, wrongful repeated exposure of the said Plaintiff to sulfa drugs and sulfurous substances in her Chemistry class despite being on notice of the Plaintiff's severe allergy to the same. As a direct result thereof, Marissa Voller has suffered serious and permanent personal injury, including but not limited to development of brittle

1

asthma. The said Plaintiff's parents are also seeking redress for their loss of consortium with the Plaintiff.

## PARTIES

1.     Plaintiff Marissa Voller (hereinafter "Marissa Voller") is an individual who resides in Raynham, Bristol County, Massachusetts. Marissa Voller is the daughter of Plaintiffs John and Kathleen Voller, who are husband and wife.

2.     Plaintiff John Voller (hereinafter "Mr. Voller") is an individual who resides in Raynham, Bristol County, Massachusetts.

3.     Plaintiff Kathleen Voller (hereinafter "Ms. Voller") is an individual who resides in Raynham, Bristol County, Massachusetts.

4.     Defendant Bridgewater-Raynham Regional School District (hereinafter the "B-R School District") is a "public employer" under G.L. c. 258, §2, with a usual place of business at 777 Pleasant Street, Raynham, Bristol County, Massachusetts.

5.     Defendant Ronald P. Gerhart (hereinafter "Dr. Gerhart") is an individual who, upon information and belief, resides at 7 Holly Tree Lane, Middleboro, Plymouth, Massachusetts 02346-3120. Dr. Gerhart was employed by the B-R School District as its Superintendent at times material hereto.

6.     Defendant Stephen G. Heaslip (hereinafter "Mr. Heaslip") is an individual who, upon information and belief, resides at 63 Fox Hill Drive, Bridgewater, Plymouth, Massachusetts 02324-2335. Mr. Heaslip was employed by the B-R School District as the Principal of the Bridgewater-Raynham Regional High School (hereinafter the "High School") at times material hereto.

2

7.    Defendant David A. Chuckran (hereinafter "Dr. Chuckran") is an individual who, upon information and belief, resides at 16 Nottingham Drive, Kingston, Plymouth, Massachusetts 02364-1133. Dr. Chuckran was employed by the B-R School District as the head of the Chemistry Department at the High School at times material hereto.

8.    Defendant Bette A. Bridges, a/k/a Bette A. Bridges-Brody (hereinafter "Ms. Bridges"), is an individual who, upon information and belief, resides at 38 Summersea Road, Mashpee, Barnstable, Massachusetts 02649-3833. Ms. Bridges was employed by the B-R School District as a Chemistry teacher at the High School at times material hereto.

9.    Defendant William R. Barber (hereinafter "Mr. Barber") is an individual who, upon information and belief, resides at 119 Elizabeth Drive, Raynham, Bristol County, Massachusetts 02767-1502. Mr. Barber was employed by the B-R School District as a Guidance Counselor at the High School at times material hereto.

10.    At all times material hereto, the actions and inaction of Dr. Gerhart, Mr. Heaslip, Dr. Chuckran, Ms. Bridges and Mr. Barber (hereinafter collectively referred to as the "Individual Defendants") towards Marissa Voller have been within the scope of their employment by the B-R School District.

## JURISDICTION

11.    Jurisdiction over this action is vested in the Court by 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1343, and the doctrines of ancillary and pendent jurisdiction.

3

## COMMON ALLEGATIONS OF FACT

12.    Marissa Voller was born on July 9, 1986.

13.    On or about January 1, 1987, Marissa Voller was diagnosed as being allergic to sulfa drugs, with exposure causing hives on the face and neck and respiratory difficulty.

14.    This information was on file with the High School when Marissa Voller first started attending the same.

15.    As part of the curriculum her junior year, Marissa Voller was assigned a Chemistry class taught by Ms. Bridges.

16.    On September 25, 2002, while participating in her Chemistry lab, Marissa Voller was exposed to sulfur dioxide causing her to suffer an anaphylactic shock.

17.    As a result of the severity of her symptoms, Marissa Voller was taken from school by ambulance to the Emergency Room of the Morton Hospital and Medical Center in Taunton, where, within an hour of the attack, she was treated by Dr. G. L. Ohri.

18.    Dr. Ohri concluded that Marissa Voller had experienced a severe allergic reaction to sulfur upon exposure to the element in her chemistry lab.

19.    Marissa Voller's symptoms included shortness of breath, hives encompassing her neck and face, and difficulty speaking, as the allergic reaction progressed down her throat.

20.    It took Marissa Voller twenty-four (24) hours to recover from this allergic attack.

21.    Ms. Voller, Marissa Voller's mother, was advised by Ms. Bridges shortly after this incident that there were no plans to use sulfur dioxide in Chemistry class for the rest of the year.

22.    Despite this disturbing incident, only two days later, on September 27, 2002, Marissa Voller was again exposed to a sulfurous substance in her Chemistry class, resulting in another severe allergic reaction causing coughing and difficulty breathing.

23.    Marissa Voller's Chemistry class was taught that day, September 27, 2002, by the then Department Head, Dr. Chuckran.

24.    Marissa Voller was treated by her pediatrician, Dr. Sinha, who confirmed that Marissa Voller had suffered an allergic reaction to sulfur and advised her to avoid sulfur and sulfur containing products.

25.    It took Marissa Voller twenty-four hours to recover from this attack.

26.    When Ms. Voller inquired of Dr. Chuckran as to why Marissa Voller was again exposed to sulfurous substances, Dr. Chuckran replied, incredulously, that he "had to see [the reaction] for [himself]."

27.    After these two incidents, Ms. Voller reminded Dr. Chuckran and Ms. Bridges of Marissa Voller's severe allergy to sulfa drugs and reiterated the importance of Marissa Voller's avoidance of sulfurous substances as her daughter's allergy to sulfa drugs cross-reacts with sulfur-containing products and fumes.

28.    Ms. Voller explained to Dr. Chuckran and Ms. Bridges that further exposure to these substances would create a potentially life-threatening circumstance.

29.    At this time, Dr. Chuckran assured Ms. Voller that sulfur and sulfurous substances would not be used in Chemistry class for the remainder of the year.

5

30.    Ms. Voller further contacted Mr. Barber, Marissa Voller's Guidance Counselor at the High School, and Mr. Heaslip, the then Principal of the High School, to address her daughter's allergy to substances containing sulfur and the need for her to avoid sulfur and sulfurous substances.

31.    Ms. Voller insisted to Mr. Barber and Mr. Heaslip that Marissa Voller not be exposed to any sulfate compounds due to her severe allergy to the same.

32.    Ms. Voller was assured by the Individual Defendants immediately after the incidents of exposure on September 25 and 27, 2002 that Marissa Voller would be given advance notice prior to any sulfate being used in her Chemistry class.

33.    As a result of the exposures on September 25 and 27, 2002, Marissa Voller was prescribed an Epi-pen, which she was required to carry with her to school. Prior thereto, Marissa Voller had never needed an Epi-pen or any other device to protect her from environmental toxins.

34.    Approximately one week later, on October 3, 2002, in complete disregard for her safety and directly contrary to the representations of the Individual Defendants, Marissa Voller was once again exposed to a sulfurous substance in her Chemistry class, taught by Ms. Bridges, without any prior warning, resulting in Marissa Voller suffering a coughing attack and having great difficulty breathing.

35.    Marissa Voller was given Benadryl by the school nurse and it took Marissa twenty-four hours to recover from this episode.

36.    On October 16, 2002, Marissa Voller had another allergic reaction caused by a sulfurous substance being used in the class next door to Marissa Voller's Chemistry class, resulting in a coughing attack and difficulty breathing.

6

37.    Marissa Voller was given Benadryl by school nurse Michelle Beshansky, used an inhaler, and had to rest before being able to return to class.

38.    It took Marissa Voller twenty-four hours to recover from this episode.

39.    As a direct result of Marissa Voller's repeated exposure to sulfur or sulfurous substances, even minimal exposure to these substances had begun to provoke severe allergic reactions.

40.    On October 17, 2002, Ms. Voller spoke with school nurse Priscilla M. Smith regarding the seriousness of the situation and the need for school officials to be more proactive in warning Marissa Voller if a sulfa drug or sulfurous substance is to be used in her vicinity.

41.    Ms. Voller also spoke with Dr. Chuckran, requesting that her daughter be removed from Chemistry class or that sulfurous substances be eliminated in their entirety from Chemistry labs at the High School, as he had promised weeks earlier.

42.    At the conclusion of their conversation Dr. Chuckran, agreed to give Marissa Voller twenty-four (24) hours' notice prior to the use of sulfur or sulfur containing products in any Chemistry lab.

43.    Despite the foregoing, and despite the knowledge on the part of Dr. Chuckran and Ms. Bridges of Marissa Voller's severe and worsening allergic reaction to sulfurous substances, on November 13, 2002, in complete disregard for her safety and directly contrary to the representations of the Individual Defendants, Marissa Voller was once again exposed to a sulfate compound in her Chemistry class, taught by Ms. Bridges.

44.    Despite the prior assurances of Dr. Chuckran and Ms. Bridges, Marissa Voller was given no advance notice that this sulfurous substance would be used in her Chemistry class.

45.    As a direct result, Marissa Voller suffered a painful spastic cough, requiring the use of an inhaler and Benadryl.

46.    This time, it took Marissa Voller twice as much time to recover, some forty-eight (48) hours.

47.    Prompted by Marissa Voller's severe reaction, and the extraordinary incompetence of the Individual Defendants, school nurse Michelle Beshansky sent a memo to Ms. Bridges, Dr. Chuckran, Mr. Barber and Mr. Heaslip reminding them of the seriousness of the situation and enclosing a notation by Marissa Voller's physician, Dr. Ohri, on a letter from Ms. Voller, stating that Marissa Voller was not to be exposed to sulfur containing products.  A true copy of this memo with its enclosure is attached hereto and incorporated herein, marked Exhibit A.

48.    In this memo, Nurse Beshansky emphasized Marissa Voller's allergy to sulfur and sulfur derivatives, stating "she cannot be in the classroom if any substance containing sulfur has been used that day."

49.    Nurse Beshansky further acknowledged Dr. Chuckran's prior assurance to Ms. Voller that her daughter would be notified twenty-four (24) hours prior to the use of sulfur or its derivatives in Chemistry class, and that Marrisa Voller would be excused from class to go to the library on such occasions.

50.    On January 16, 2003, while in Chemistry class taking a test, Marissa Voller started bleeding from her nose and was sent to the school nurse .

51.    When the nurse could not stop the bleeding, Marissa Voller was sent to the hospital.

52.    Incredulously, at the time, her teacher, Ms. Bridges, told her that if she left the class to seek medical attention her test would be invalid.

53.    Ms. Bridges and Dr. Chuckran refused to give Marissa Voller alternative labs or assignments or otherwise provide her with a reasonable accommodation and instead continued to expose her to sulfurous substances and then gave her a failing grade in her Chemistry class because she was too ill to complete her sulfate compound labs.

54.    When Ms. Voller attempted to contact Ms. Bridges and Marissa Voller's guidance counselor, Mr. Barber, to discuss this grade, Ms. Voller received no response.

55.    Marissa Voller's next exposure to sulfur at the High School occurred in her Chemistry class on February 28, 2003, once again taught by Ms. Bridges.

56.    Marissa Voller suffered a rash, difficulty breathing and talking, shortness of breath, and wheezing as a result of this exposure on February 28, 2003.

57.    It took Marissa Voller several days to recover from this episode, which was significantly worse than her prior allergic reactions.

58.    On March 3, 2003, Marissa Voller was again exposed to a sulfate compound while at the High School, this time while walking in the corridor near the Chemistry labs.

59.    As set forth in the school Nurse's notes, Marissa Voller suffered an immediate systemic attack, resulting in acute respiratory distress and a reaction to her skin.

60.    Specifically, her lungs decreased in the lower lobes, she had an aspiratory wheeze in her upper right lobe, a tight cough, and facial numbness.

61.    As a result of this episode and her continued exposure to sulfa drugs and sulfurous substances at the High School, Marissa Voller was unable to return to the High School and spent the next two days in and out of the hospital, experienced difficulty in breathing and suffered chest pain.

62.    On March 9, 2003, Marissa Voller was again taken to the hospital by ambulance due to difficulty breathing and coughing and wheezing.

63.    On this date, her doctor at Morton Hospital and Medical Center issued a Disability Certificate certifying that Marissa Voller was totally incapacitated and was unable to return to school. A true copy of the Disability Certificate is attached hereto and incorporated herein, marked Exhibit B.

64.    On March 21, 2003, Marissa Voller was examined by a specialist, Dr. Jonathan Arm, of Brigham and Women's Center for Chest Diseases.

65.    The pulmonary function test administered by Dr. Arm revealed Marissa Voller's lungs were functioning at only 70% intake level and 71% outtake level.

66.    In a letter dated March 21, 2003 to Mr. Heaslip, Dr. Arm concluded that Marissa Voller had developed brittle asthma as a direct result of exposure to volatile chemicals, including sulfur dioxide, at the High School and directed that she not be permitted to return to school prior to August 2003, to give her lungs a chance to heal. A true copy of the said letter is attached hereto and incorporated herein, marked Exhibit C.

67.    Dr. Arm further stated in his letter that "[w]ith time and with repeated exposures, her reactions are becoming more severe and provoked by more minimal exposures."

68.    On March 22, 2003, Ms. Voller wrote to then Superintendent Dr. Gerhart, chronicling everything that had happened to Marissa Voller during her Junior year at the High School and detailing the negligent and wrongful manner in which she was treated by Ms. Bridges, Dr. Chuckran, Mr. Heaslip and Mr. Barber, who failed to take any precautions to protect Marissa Voller from further personal injury, as well as the effect this had on Marissa Voller.    A true copy of the said letter is attached hereto and incorporated herein, marked Exhibit D.

69.    Despite Ms. Voller's request in her letter for the opportunity to meet with Dr. Gerhart to discuss a reasonable accommodation for Marissa Voller, Ms. Voller did not even receive the courtesy of a reply from Dr. Gerhart to her letter.

70.    The School District and the Individual Defendants were required by Federal and State law to establish and maintain procedures to assure that children with disabilities such as Marissa Voller are guaranteed procedural safeguards with regard to the provision of free appropriate public education.

71.    Pursuant to Federal and State law, the School District and the Individual Defendants were required to give the Plaintiffs prior written notice of their refusal to initiate the provision of alternative and appropriate free education to Marissa.

72.    The School District and the Individual Defendants had no discretion in whether or not to comply with the provisions of Federal and State law, including but not limited to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et*

*seq.*, and Mass.Gen.Laws ch. 71B, § 1 *et seq.* and the regulations promulgated thereunder.

73.     The School District and the Individual Defendants repeatedly failed to fulfill their obligations under the IDEA and G.L.c. 71B., including but not limited to establishing a policy for addressing the needs of students such as Marissa Voller, identifying Marissa Voller as suffering from a disability or referring her for an evaluation to determine the same, and making a reasonable accommodation of that disability by providing a special educational program to meet Marissa Voller's needs as a child with a disability.

74.     In addition, the School District was negligent in hiring, training, supervising and continuing to employ the Individual Defendants.

75.     The School District failed to adequately train the Individual Defendants and otherwise make them aware of the requirements of the IDEA, G.L.c. 71B and the regulations promulgated thereunder.

76.     The School District failed to establish and implement policies which would enable the School District and its employees to meet the requirements of the IDEA, G.L.c. 71B and the regulations promulgated thereunder.

77.     In failing to fulfill their obligations under the IDEA, G.L.c. 71B and the regulations promulgated thereunder, as aforesaid, and as a result of their negligent and wrongful conduct described above, the  School District and the Individual Defendants caused Marissa Voller to suffer grievous bodily and psychological injury, as well as incur medical expenses and other financial harm.

78.    As a direct result of the repeated and completely avoidable and unnecessary exposures to sulfurous substances while a student at the High School, Marissa Voller has developed brittle asthma and severe sensitivity to chemicals and pollutants, including tobacco smoke.

79.    As a direct result of the complete indifference, incompetence and negligence of the School District and the Individual Defendants, Marissa Voller and her family have suffered substantial and irreversible damage.

80.    As a direct result of actions and inaction of the Defendants described above, Marissa Voller, formerly an accomplished dancer having won many awards, is now unable to compete in dance competitions and seek scholarships for college or dance schools, which she would have otherwise easily been able to obtain.

81.    Due to the severity of her asthma and sensitivity to chemicals and pollutants, all caused by the Defendants, Marissa Voller was unable to participate in a number of school activities such as her Junior and Senior proms, school dances, and the National Youth Leadership Forums on Medicine and Law, to which she was nominated in 2003.

82.    Due to the severity of her asthma and sensitivity to chemicals and pollutants, all caused by the Defendants, Marissa Voller must now have a breathing machine in her home, carry an inhaler and Epi-pen with her at all times, and take daily medication for her asthma.

83.    The severity of her asthma and sensitivity to chemicals and pollutants, all caused by the Defendants, has also interfered with Marissa Voller's further education and her ability to obtain employment.

84.     Marissa Voller has been hospitalized on several occasions for severe asthma attacks since March 2003.

85.     The Defendants have stolen Marissa Voller's teenage years from her and caused her to suffer a disability that will remain with her for the rest of her life, as well as caused her excruciating pain, mental anguish and extreme emotional distress.

86.     As a direct result of actions of the Defendants described above, Marissa Voller's quality of life has been substantially and permanently diminished, as have her projected earnings from employment.

87.     On or about July 27, 2004, the Plaintiffs made a written demand upon the School District for relief under the Massachusetts Tort Claims Act, General Laws Chapter 258, § 4, but the School District has neglected, failed, and refused to even acknowledge the Plaintiffs' demand, much less respond to it in a meaningful fashion, causing the Plaintiffs to suffer additional emotional distress and anguish.

## COUNT I: VIOLATION OF 42 U.S.C. § 1983

88.     The Plaintiffs hereby repeat and re-allege paragraphs 1 through 87 above as if fully set forth herein.

89.     Based upon their actions and inaction, the Defendants, and each one of them, have violated the procedural due process rights of the Plaintiffs in violation of 42 U.S.C. § 1983.

90.     The Defendants' aforesaid violation is based on, *inter alia*, the Defendants' negligent violation of specific legal obligations set forth in the IDEA, 20

U.S.C. § 1400 *et seq.*, Mass.Gen.Laws ch. 71B, § 1 *et seq.*, and its implementing regulations, 603 C.M.R. § 28 *et seq.*

91.    The Plaintiffs have suffered damages as a result of the Defendants' conduct as aforesaid.

## COUNT II: NEGLIGENCE

92.    The Plaintiffs hereby repeat and re-allege paragraphs 1 through 91 above as if fully set forth herein.

93.    Based upon their actions and inaction as set forth above, the Defendants, and each one of them, have failed to meet their duty of care owed to Marissa Voller and are guilty of negligence towards the Plaintiffs.

94.    In particular, and without limitation, the School District was negligent in hiring, training, supervising and continuing to employ the Individual Defendants.

95.    In particular, and without limitation, the Individual Defendants, in the course and scope of their employment by the School District, negligently exposed Marissa Voller to sulfurous substances on a repeated basis and negligently failed to protect her from such exposure.

96.    In particular, and without limitation, all of the Defendants have been negligent with respect to their failure to comply with the requirements of the IDEA, 20 U.S.C. § 1400 *et seq.*, Mass.Gen.Laws ch. 71B, § 1 *et seq.*, and the regulations promulgated thereunder.

97.    Under the Massachusetts Tort Claims Act, Mass.Gen.Laws ch. 258, § 1 *et seq.*, the School District is liable for both its own negligence and that of the Individual Defendants.

98.    The Plaintiffs have suffered harm as a result of the Defendants' negligence as aforesaid.

## COUNT III:  VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT

99.    The Plaintiffs hereby repeat and re-allege paragraphs 1 through 98 above as if fully set forth herein.

100.    Based upon their actions and inaction, the Defendants, and each one of them, have interfered with Marissa Voller's exercise and enjoyment of rights secured by the constitution and laws of the United States and the Commonwealth of Massachusetts in violation of Mass.Gen.Laws ch. 12, §§ 11H, 11I.

101.    The Plaintiffs have suffered harm as a result of the Defendants' conduct as aforesaid.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

102.    The Plaintiffs hereby repeat and re-allege paragraphs 1 through 101 above as if fully set forth herein.

103.    As a result of their negligent conduct towards Marissa Voller, the Defendants have caused Marissa Voller to suffer emotional distress manifested by physical symptomatology and a reasonable person would have suffered emotional distress under the circumstances.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104.    The Plaintiffs hereby repeat and re-allege paragraphs 1 through 103 above as if fully set forth herein.

105.    As set forth above, the Defendants (1) intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of their conduct, (2) which was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, and (3) caused the Plaintiffs to suffer distress which (4) was severe and of such a nature that no reasonable person could be expected to endure it.

## COUNT VI: LOSS OF CONSORTIUM

106.    The Plaintiffs hereby repeat and re-allege paragraphs 1 through 105 above as if fully set forth herein.

107.    At all times material hereto, Marissa Voller has been dependent on her parents, Plaintiffs John and Kathleen Voller, for support.

108.    Based upon their acts and omissions as described above, the Defendants have deprived John and Kathleen Voller of the companionship, affection, and support of their daughter, Marissa Voller.

109.    As a direct and proximate result of the foregoing, John and Kathleen Voller have suffered damages for which the Defendants are liable pursuant to Mass.Gen.Laws ch. 231, § 85X.

## COUNT VII: ASSAULT AND BATTERY

110.    The Plaintiffs hereby repeat and re-allege paragraphs 1 through 109 above as if fully set forth herein.

111.    As set forth above, by repeatedly and intentionally exposing Marissa Voller to sulfurous substances, Dr. Chuckran and Ms. Bridges are guilty of an assault and battery upon and against Marissa Voller.

112.    Marissa Voller has suffered damages as a result of the same.


WHEREFORE, the Plaintiffs respectfully request that this Court grant the following relief:

1.    Pursuant to Count I, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;

2.    Pursuant to Count II, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;

3.    Pursuant to Count III, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;

4.    Pursuant to Count IV, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;

5.    Pursuant to Count V, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;

6.    Pursuant to Count VI, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;

7.    Pursuant to Count VII, award such damages as may be proven at trial, together with punitive damages, interest, costs, and reasonable attorney's fees;  and

8.    Such other and further monetary, injunctive and declaratory relief as this Court deems just and proper.

**THE PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY
ON ALL CLAIMS SO TRIABLE**

Respectfully submitted,
By their attorneys,

David J. Paliotti, Esquire
BBO No. 547501
GREENBAUM, NAGEL,
FISHER & HAMELBURG
200 High Street, 4th Floor
Boston, MA  02110
(617) 423-4300

## VERIFICATION

I, Marissa Voller, hereby state that I have reviewed the factual allegations in this Verified Complaint, and that based upon my personal knowledge I know the said factual allegations to be true and accurate, with the exception of those statements expressly made upon information and belief, which statements I believe to be true and accurate. I am also familiar with the documents appended hereto as exhibits and know the said documents to be true copies of the originals.

Signed under the pains and penalties of perjury this 29 day of April , 2005.

Marissa Voller

# Memorandum

To: Mrs. Bridges, Dr. Chuckran, Mr. Heaslip, and
    Mr. Barber — *guidance*

From: Michelle Beshansky

**School Nurses**

Date: 11/21/02

Re:   Marissa Voller

*(handwritten annotations above recipients: teacher, Dept Head, Principal)*

---

Marissa as you know has an allergy to SULFUR. She may also have an allergy to products that have sulfur derivatives. I have requested clarification from her MD. At this point, after much discussion, the mother has requested advance notice of any lab involving these substances. Dr Chuckran has assured the mother that Marissa would be given 24 hour notice and that she would go to the library as an alternative to lab in that classroom. It is very important that we protect her from another occurrence. She can not be in the classroom if any substance containing sulfur has been used that day. I appreciate your help in this matter. Any questions please see me.

Attached please find a copy of the letter from Mrs. Voller and the response from Her MD.

*[Handwritten at top:]* 11-17-02    [illegible] per allergy to sulfa drugs and cross reacts to sulfer containing products & fumes. She certainly should not be exposed to sulfer.

November 17, 2002

Dr. G. Ohri
68 Church Green
Taunton, MA 02780

*[Handwritten:]* —Gs Ohri M
11-19-02

RE: Marissa Voller, sulfa allergy

G.L. OHRI, M.D.
68 CHURCH GREEN, #1
TAUNTON, MA 02780
PHONE: 508-824-8743

Dear Dr. Ohri:

*[Handwritten:]* attending physician — covering 1 St

As you are aware of my daughter, Marissa Voller, has a known allergy to sulfa drugs and sulfites found in foods. On September 25, 2002 during her chemistry class at Bridgewater-Raynham Regional High School she suffered an anaphylactic shock to sulfur dioxide. While performing this lab she found herself unable to breath fully, experiencing hives on her neck and face area and her voice took on a different tone while the reaction moved to her throat area. The school nurse, Michelle Berchansky, RN, monitored her heart rate and oxygen level. Neither rate was within normal ranges. At this time Ms. Berchansky called the EMS in Bridgewater. You were kind enough to observe Marissa approximately one hour after the original episode. Since this time period, Dr. Sinha has prescribed an Epi-Pen for Marissa.

Two days following this original episode, the department head assured me that this substance would not be used again during chemistry this year. I felt comfortable with Marissa remaining in Chemistry. Unfortunately Marissa has experienced 2 more reactions and has been sent out of the lab as a precautionary measure. I believe the substances involving are sulfates, and sulfiting agents that includes sulfur dioxide, sulfite salts, and sulfate salts. Under certain conditions sulfites and sulfates (heat, pH and concentration) can be metabolized to sulfur dioxide.

My concern is twofold. I believe that under IDEA, Marissa has the right to continue to study Chemistry. She not only enjoys the class, but also is maintaining academically. In addition, Marissa will be required to take 2 labs for many college requirements. This would fulfill the requirement and is also a pre-requisite for other labs. If she was force to drop the class she may not be able to graduate with her class nor continue in any lab class.

Would you please put into writing that you observed Marissa and state that she cannot be put into a situation where these offending agents are present?

In order to stop the use of these agents in her class, the school has asked that you as the observing physician state that you saw her and that she did have a reaction. If a medical doctor states this then and only then will she be able to continue taking the class in a safe environment.

I believe that the teacher and department head can be creative enough to fulfill their objectives without using these agents or provide an alternative lesson with ADVANCED NOTICE for Marissa. One incident found the teacher telling Marissa an agent was being used and the class had been ongoing for 10 minutes. Please forward your letter to:

Michelle Berchansky, RN
B-R Regional High School
Mt. Pleasant Street
Bridgewater, MA 02324

I thank you for your continued care of Marissa. She is so fortunate to have you in her life.

Kathleen G Voller
PO Box 105
Raynham, MA 02767

November 19, 2002

RE: Marissa Voller
D.O.B. : 07-09-86

Please find attached a copy of Marissa Voller's visit to our office regarding
this issue.

Thank you,

*G. L. Ohri. M.D*

G.L. Ohri, M.D.

SEP 25 ___ 97.2° Allergy to Sulfa - exposed to Sulfa in a lab @ school
___ 98% p.88 had hives & coughing immediately BP 110/64
Benadryl 20mg X R + gd Orthotricyclen (R) RN     Allergy ___
epipen ½ in case exposure      Benadryl to closely

---

G.L. OHRI, M.D., F.A.A.P.     Phone (508) 824-8743



MORTON HOSPITAL AND MEDICAL CENTER
88 Washington Street, Taunton, MA 02780 Tel. (508) 828-7000

## <u>DISABILITY CERTIFICATE</u>

Date _March 9 07_

NAME _Voller    Neusse_

ADDRESS _____

EMPLOYER _____

To whom it may concern:

    This is to certify that the above patient was under my Professional care from _March 9 07_ to _____
Inclusive, and was totally incapacitated during this time.

    This is to further certify that the above patient has now Recovered sufficiently to be able to return to  light /  regular  work.

Duties on _____

Restrictions: _Out  of  School_
_____

Dr. _____

Form # 0678543




**Center For Chest Diseases**
Brigham and Women's Hospital
75 Francis Street
Boston, Massachusetts 02115
Tel: 1-888-BWH-LUNG
Fax: 617-582-6102

--------------------------------

Partners Asthma Center
15 Francis Street
Boston, MA 02115
--------------

Voller, Merissa
17753005
03/21/03

Mr. Steven Heaslip
Principal
B-R Regional High School
177 Prospect Street
Bridgewater, MA 02324

Dear Mr. Heaslip:

I saw Merissa in the Asthma Center of the Brigham and Women's Hospital today. Merissa has developed brittle asthma, which is readily provoked by exposure to volatile chemicals including sulphur dioxide and by passive exposure to tobacco smoke. It is essential that she is provided with a safe learning environment away from such exposures. With time and with repeated exposures, her reactions are becoming more severe and provoked by more minimal exposures. It is therefore essential that she be removed from such an environment and that her lungs be given time to heal.

I am grateful for your assistance in this matter.

Sincerely yours,

JONATHAN ARM, M.D.

eScription document:1-1131601
CC: John Voller
P.O Box 105
Raynham, MA 02767
CC: Kathi Voller

DD: 03/21/03

Patient: VOLLER,MARISSA  MRN: 17753005(BWH)
Author: Jonathan Arm, M.D.

Status: Signed
Visit Date: 03/21/2003

1

March 22, 2003

Dr. Ronald Gerhart
Superintendent of Schools
Bridgewater-Raynham Regional School District
777 Pleasant Street
Raynham, MA 02767

Dear Dr. Gerhart:

Enclosed please find a time line encompassing a course of events that
occurred to our daughter, Marissa Voller, while a student at
Bridgewater-Raynham Regional High School. This timeline will show
you a reoccurrence of exposure to sulfate compounds causing a severe
allergic reaction. All events happened in her junior Chemistry class
since September 25, 2002. On that date, the exposure to sulfur
dioxide caused an anaphylactic shock. Within days we were told this
was the only time this compound would be used in the Chemistry
class. After the second exposure when we asked that she not be re-
exposed due to its life-threatening consequences, we were told she
would be given 24 hours notice when any sulfate would be used. In
addition at this time period her allergic reactions to this chemical now
required her to carry an Epi-pen to travel to Chemistry class.

Within a few months after the first exposure, contact was made with
Dr. Chuckran, Department Head; Mr. William Barber, Guidance
Counselor; and Mr. Stephen Heaslip. As parents, we allowed the
doctors to communicate and be questioned by school officials. Both
her attending physician and her own pediatrician sent documenting
correspondence to B-R.

As you can see from the copy of the nurse's records, the re-exposure
happened at least 4 more times in the same Chemistry class. Passing
by the same Chemistry lab on her way to another class caused the last
reaction Marissa experienced. This happened on a Monday, 3/3/03
within a 3-day period to a severe reaction on 2/28/03. The last 2
exposures caused a severe long-lasting allergic reaction. She was

taken to the hospital emergency room 3 times during the next 10-day period due to difficulty breathing. This was in addition to a hospitalization and office visits to her doctors. Her recuperation has necessitated breathing treatments every 2-4 hours and complete bed rest for almost 3 weeks to combat the constant chest pains she is experiencing.

On March 21, 2003, Marissa was seen by Dr. Jonathan Arm, at the Pulmonary Center for Lung Diseases at the Brigham and Woman's Hospital, Boston. Using a pulmonary function test, he determined that Marissa's lungs on this date are now operating at only 70%. He will be seeking more comprehensive testing in 3 weeks to determine the damage extent and any durability to the damage. After reviewing her records from the high school health room, and the tests performed in the pulmonary lab, he has determined that she may not reenter the high school until August of 2003. The risk of exposure again could cause Marissa her life.

Although this decision alleviates any further health threats in her school environment, you can only imagine what those words mean to a once active, vibrant 16-year-old student. The loss of contact with her peers, teachers, and friends is important but it pales to the academic loss. The day-to-day encouragement one gains by sharing the learning process cannot be equaled in a tutoring situation. Marissa had just begun Drivers Education thru the school and was looking forward to her Junior Prom. These are the tip of the iceberg of events she will not be able to enjoy with her fellow classmates, simply because a teacher refused to stop using a substance that causes a life-threatening allergic reaction.

The exposures have culminated a great personal defeat to Marissa. For the past 10 years she has diligently strived to become a dancer. She holds regional, national and international titles. Due to time needed to recuperate, she has ceased her pre-professional work and passed on an opportunity to represent the United States as dance enters the Olympics.

This is a situation that never should have occurred. This falls into the same category as a student who has a severe allergy to peanuts. It certainly would not be tolerated if peanut butter were used in classroom lessons if a student had a known allergy. As we wrote to Mr. Heaslip, we believe that the Chemistry teacher could have used creativity in finding alternative substances and not used any sulfates.

The Chemistry teacher failed to accept the seriousness of the situation. In many instances she did not properly nor effectively give 24-hour notice. When Marissa entered the class, she still did not inform her of its usage. During the course of one class the teacher physically blocked the door with her body while Marissa was having a reaction. On those occasions that she did notify Marissa of chemicals being used, no alternative lessons were provided. To make up lessons, Marissa made prior arrangements with the teacher to stay after school on three separate occasions. Each time Marissa was turned away because the offending chemicals were being used with other students.

We would like an opportunity to meet with you and discuss this situation at your earliest convenient time. Thank you in advance.


Kathleen G. Voller


John J. Voller


P.O. Box 105
Raynham, MA 02767

℀JS 44  (Rev. 11/04)

## VIL COVER S̶ 05  1 0 9 3 3  M W

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)  PLAINTIFFS**  Marissa Voller, John Voller and Kathleen Voller

**DEFENDANTS**  Bridgewater-Raynham Regional School District, Ronald P. Gerhart, Stephen G. Heaslip, David A. Chuckran, Bette A. Bridges,*

**(b)**  County of Residence of First Listed Plaintiff    **Bristol**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    **Bristol**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

*a/k/a Bette A. Bridges-Brody, and William R. Barber

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)  617-423-4300
David J. Paliotti, GREENBAUM, NAGEL, FISHER & HAMBLING, 200 High Street, Boston, MA 02110

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ❑ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ❑ 2  U.S. Government Defendant
- ❑ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated or Principal Place of Business in This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business in Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | | | ❑ 900Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | | | ❑ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☒ 440 Other Civil Rights | | | | |

### V. ORIGIN (Place an "X" in One Box Only)

Appeal to District Judge from Magistrate Judgement

- ☒ 1  Original Proceeding
- ❑ 2  Removed from State Court
- ❑ 3  Remanded from Appellate Court
- ❑ 4  Reinstated or Reopened
- ❑ 5  Transferred from another district (specify)
- ❑ 6  Multidistrict Litigation
- ❑ 7  Appeal to District Judge from Magistrate Judgement

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  42 U.S.C.§1983

Brief description of cause:  Defendants failed to accommodate disability of high school student, causing her to suffer permanent personal injury and other harm.

### VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $10,000,000.00  CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ❑ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE ___    DOCKET NUMBER ___

DATE  5/6/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ___    AMOUNT ___    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)___ Marissa Voller, et al. v. Bridgewater-Raynham
   Regional School District, et al. _____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local
   rule 40.1(a)(1)).

   | | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |

   [X] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ] IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.
   
         None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                        YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
   §2403)
                                                        YES [ ]    NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                        YES [ ]    NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                        YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                        YES [X]    NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division   [X]      Central Division  [ ]      Western Division  [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
        residing in Massachusetts reside?

        Eastern Division   [X]      Central Division  [ ]      Western Division  [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
   submit a separate sheet identifying the motions)
                                                        YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   David J. Paliotti, GREENBAUM, NAGEL, FISHER & HAMELBURG
ADDRESS _____ 200 High Street, 4th Floor, Boston, MA 02110
TELEPHONE NO. _____ 617-423-4300

(CategoryForm.wpd - 2/15/05)