UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10933MLW

| | |
|---|---|
| MELISSA VOLLER, JOHN VOLLER and KATHLEEN VOLLER <br> Plaintiffs <br><br> v. <br><br> BRIDGEWATER-RAYNHAM SCHOOL DISTRICT, RONALD P. GERHART, STEPHEN G. HEASLIP, DAVID A. CHUCKRAN, BETTE A. BRIDGES, a/k/a BETTE A. BRIDGES-BRODY, and WILLIAM A. BARBER <br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

### I.    INTRODUCTION

The Defendants, Bridgewater-Raynham School District, Ronald P. Gerhart, Stephen G. Heaslip, David A. Chuckran, Bette A. Bridges, a/k/a Bette A. Bridges-Brody and William A. Barber ("Defendants"), have moved the Court to dismiss Counts I, II, III, VI, V, VI and VII of the Verified Complaint ("Complaint") filed by the Plaintiffs Marissa Voller (individually "Ms. Voller"), John Voller and Kathleen Voller (collectively the "Plaintiffs") because the Complaint does not state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

The Plaintiffs allege, and the Defendants deny, that the Defendants are liable for their alleged failure to prevent Ms. Voller's exposure to sulfurous materials in chemistry lab during her junior year as a student at Bridgewater-Raynham High School. Ms. Voller's parents allegedly informed Bridgewater-Raynham High School that Ms. Voller is allergic to sulfa drugs. The Plaintiffs alle

that Ms. Voller suffered personal injury and loss as a result of her alleged exposure to sulfurous materials in chemistry lab.

The Plaintiffs allege in Counts I and III of the Complaint that the Defendants are liable under federal and state civil rights laws for their alleged violation of Ms. Voller's purported rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C., §1400 *et seq*. The Plaintiffs cannot prevail on their claims based on an alleged deprivation of Ms. Voller's purported rights under IDEA because the Plaintiffs did not exhaust administrative procedures which are a prerequisite to suit on the claims asserted in Counts I and II. The Plaintiffs have not alleged an actionable procedural due process violation because there existed an adequate post deprivation remedy under state law. The Plaintiffs attempt to dress up what is essentially a common law negligence claim as a civil rights violation does not avail and cannot support liability under federal civil rights laws.

The Plaintiffs cannot prevail against any natural person Defendant on Counts II and IV of the Complaint as a matter of law because public employees cannot be liable under Massachusetts common law or the Massachusetts Tort Claims Act for negligence within the scope of their employment. M.G.L. c. 258, § 2. The Court should dismiss Counts II and IV, which purport to allege liability against all Defendants for negligence, to the extent that they allege liability against any natural person defendant. The Court should dismiss Count IV as against the Defendant School District because it is redundant and duplicative of Count II.

In addition to the reasons stated above for dismissing the Plaintiffs' claim under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I, the Court should dismiss Count III because it does not allege an interference with Ms. Voller's civil rights by means of threats, intimidation or coercion. The Plaintiffs' allegation that Defendant Bridges told Ms. Voller that if

2

she left the classroom while taking a test to consult the nurse about a nosebleed "her test would be invalid" does not amount to a "threat" as that term is used in MCRA and did not work an interference with any recognized civil right. Accordingly, the Court should dismiss Count III.

The Court should dismiss Count V, which purports to allege liability for intentional infliction of emotional distress. Defendant Bridgewater-Raynham School District cannot be held liable for alleged common law intentional torts of its employees as a matter of law. See M.G.L. c. 258, § 10(c). Notwithstanding of the Plaintiffs' rote recitation of the elements of a claim for intentional infliction of emotional distress, the Defendants conduct amounts in substance to an alleged negligent failure to prevent exposure to common chemical substances allegedly used in chemistry lab. Under no circumstance can this conduct reasonably be described as "extreme and outrageous, beyond all decency and utterly intolerable in a civilized community." The Court should dismiss Count V.

Count VII against the Defendants Bridges and Chuckran for assault and battery must fail because they have not alleged sufficient intent on the part of either Defendant to state a claim upon which relief can be granted. The Court should dismiss Count VI because it is derivative of other failed claims by the Plaintiffs in the Complaint.

The Defendants also move the Court to strike and dismiss those portions of each paragraph of the Plaintiffs prayer for relief which seeks "punitive damages." Punitive damages are no available under the causes of action asserted in Counts II, IV, V, VI and VII, nor are punitiv damages available against the governmental defendant on Counts I and III as a matter of law. T' demand for punitive damages against natural person defendants in Counts I and III should dismissed because the Plaintiffs have not alleged facts which support such damages.

3

## II.    STATEMENT OF RELEVANT ALLEGATIONS AND FACTS

The Plaintiffs allege that during Ms. Voller's junior year of high school, she was enrolled in Defendant Bette Bridges's chemistry class at Bridgewater-Raynham High School. Complaint, para. 15. Defendant David A. Chuckran, Ph.D. was the head of the Chemistry Department at Bridgewater-Raynham High School. Complaint, para. 7. Defendant Ronald P. Gerhart was the Superintendent of the Bridgewater-Raynham School District. Complaint, para. 5. Defendant Stephen Heaslip was the Principal of the Bridgewater-Raynham High School. Complaint, para. 6. Defendant William Barber was a Guidance Counselor at the high school. Complaint, para. 9.

The Plaintiffs allege that on or about January 1, 1987, Ms. Voller was diagnosed as being allergic to sulfa drugs, with such exposure causing hives on her face and neck, as well as respiratory difficulty. Complaint, para. 13. The Plaintiffs allege that on various occasions during the school year, Ms. Voller was exposed to sulfur dioxide in or around the chemistry lab. Complaint, paras. 16, 22, 34, 36, 43, 55, 58. The Plaintiffs allege that Ms. Voller's exposure caused her allergic reactions and she developed a health condition known as brittle asthma. Complaint, para. 78.

Count I of the Complaint asserts the lone federal law claim: a claim that the Defendants violated the Plaintiff's "procedural due process rights" based on alleged "negligent violation of specific legal obligations set forth in the IDEA" and alleged violation of Massachusetts state law. Complaint, paras. 89, 90. Count I does not allege that Ms. Voller exhausted administrative procedures required by IDEA as a prerequisite to suit. On information and belief, the Plaintiffs did not initiate or comply with any of IDEA's administrative requirements. The Complaint asserts that Count I is based on a procedural due process violation "based on, *inter alia*, the Defendants' negligent violation of specific legal obligations set forth in the IDEA, 20 U.S.C., § 1400 *et seq.*,

4

Mass.Gen.Laws ch. 71B *et seq.*, and its implementing regulations, 603 C.M.R. § 28 *et seq.*"
(Emphasis added).

The remaining counts of the Complaint allege negligence (Count II), violation of the
Massachusetts Civil Rights Act (Count III), negligent infliction of emotional distress (Count IV),
intentional infliction of emotional distress (Count V), loss of consortium (asserted by Miss Voller's
parents)(Count VI), and assault and battery (Count VII).

## III.    ARGUMENT

### A.    THE APPLICABLE LEGAL STANDARD FOR A MOTION TO DISMISS.

Rule 12 (b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions
which "fail to state a claim upon which relief may be granted." See Fed.R.Civ.P. 12 (b)(6). A
motion to dismiss under Rule 12 (b)(6) tests the sufficiency of the pleadings. "When confronted
with a motion to dismiss the court accepts as true all well-pleaded factual averments and draws all
reasonable inference in the plaintiff's favor." Dartmouth Review v. Dartmouth College, 889 F.2d
13, 16 (1st Cir.1989). However, the court need not accept a complaint's "bald assertions or legal
conclusions" when assessing a motion to dismiss. See Abbott III v. United States, 144 F.3d 1, 2 (1st
Cir.1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each
material element necessary to sustain recovery under some actionable theory." Romero-Barcelo v.
Hernandez-Agosto, 75 F.3d 23, 28, n. 2 (1st Cir.1996). Dismissal is appropriate under Rule 12 (b)(6)
of the Federal Rules of Civil Procedure if the complaint presents no set of facts justifying discovery.
See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

B.    THE COURT SHOULD DISMISS COUNTS I AND III BECAUSE NEITHER
      COUNT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Court should dismiss Counts I and II of the Complaint because either Count states a

claim upon which relief can be granted. Count I purports to allege liability under 42 U.S.C. § 1983

for alleged deprivation of Ms. Voller's "procedural due process rights" by reason of the Defendants'

alleged negligent violation of the Individuals with Disabilities Education Act ("IDEA"). Count III

purports to allege liability under M.G.L. c. 12, § 11I for alleged deprivation of Ms. Voller's

"procedural due process rights" also by reason of their allegedly negligent violation of IDEA. The

Plaintiffs' claim is barred by their failure to exhaust administrative procedures made mandatory by

IDEA. To the extent that the Plaintiffs would assert a claim based on a deprivation of procedural

due process, their claim is barred because an adequate post-deprivation remedy was available under

state law. Counts I and III do not state a claim upon which relief can be granted because the

Defendants' conduct is alleged to be merely negligent conduct which cannot support a claim under

federal or state civil rights laws. Additionally, each of the natural person Defendants is entitled to

qualified immunity. Because the Plaintiffs cannot prevail on Counts I and III of the Complaint, the

Court should dismiss Counts I and III. Because Count I provides the only basis for federal

jurisdiction, the Court should dismiss the Complaint in its entirety.

Section 1983 "supplies a private right of action against a person whom, under color of state

law, deprives another of rights secured by the Constitution or by federal law." Evans v. Avery, 100

F.3d 1033, 1036 (1st Cir. 1996). Section 1983 does not create any substantive rights, but rather

provides a vehicle for the protection and vindication of rights secured by the United States

Constitution or by federal law. Baker v. McCollan, 443 U.S. 137, 146 n.3 (1979); Boveri v. Town

of Saugus, 113 F.3d 4, 6 (1st Cir. 1997). The plaintiff in a civil rights action under §1983 must

6

prove, by a preponderance of the evidence, that a person acting under color of state law deprived him of a constitutional or federally-protected right. 42 U.S.C. § 1983; Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994). The first step of analysis of claims under § 1983 is to identify a specific right derived from a specific provision of the constitution or federal law. Albright v. Oliver, 510 U.S. 266, 271 (1994). In the present lawsuit the Plaintiffs assert that the Defendants "violated the procedural due process rights of the Plaintiffs in violation of 42 U.S.C., § 1983" and that the "aforesaid violation is based on, *inter alia*, the Defendants' negligent violation of specific legal obligations set forth in the IDEA, 20 U.S.C., § 1400, *et seq.*, Mass.Gen.Laws ch. 71B, § 1 *et seq.*, and its implementing regulations, 603 C.M.R. § 28 *et seq.*" Complaint, paras. 89, 90. Thus, the federal civil right allegedly deprived by the Defendants is alleged unspecified entitlements of the Plaintiff under IDEA.

      1.      The Court Should Dismiss Counts I and III Because the Plaintiffs Did Not Exhaust Mandatory Administrative Procedures Prior to Filing Suit.

The Court should dismiss Counts I and III of the Complaint because the Plaintiffs failed to exhaust their available administrative remedies under the IDEA before filing the present civil action. The Plaintiffs' failure to exhaust administrative remedies is fatal to their claim.

The IDEA is a comprehensive statutory scheme enacted by Congress "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services." Frazier v. Fairhaven School Committee, 276 F.3d 52, 58 (1st Cir.2002); 20 U.S.C. § 1400(d)(1)(A)-(B). The IDEA contains a panoply of procedural safeguards designed to ensure that parents will have substantial opportunity for input on those decisions affecting the education of their children with special needs. Frazier, 276 F.3d at 58. For example, parents of a child with a disability have the right to examine all records relating to the child, to participate in meetings with respect to identification, evaluation and educational placement

7

of the child, and to receive prior written notice whenever an agency proposes to change, or refuses to change, the child's placement or program. See 20 U.S.C. § 1415(b).

The IDEA also provides parents with "an opportunity to present complaints with respect to any matter relating to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to a child." Frazier, 276 F.3d at 58; 20 U.S.C. § 1415(b)(6). After lodging a formal complaint, the parent then has recourse to an impartial due process hearing conducted at either the state educational agency or the local educational agency. See 20 U.S.C., § 1415(f)(1). In Massachusetts, the Department of Education has created the Bureau of Special Education Appeals ("BSEA") and empowered it to handle such appeals through mediation and hearings. Frazier, 276 F.3d at 59; See Mass. Regs. Code Title 603 § 28.08.

Only after an aggrieved party has exhausted available administrative remedies does he or she "have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(9)(2). The right to bring a civil action based on a violation of the IDEA is ". . . carefully circumscribed. As a condition precedent to its exercise, an aggrieved party must satisfy the IDEA's exhaustion remedies." Frazier, 276 F.3d at 59. The IDEA states that "before the filing of a civil action under such laws [Federal laws protecting the rights of children with disabilities] seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this chapter shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l). The exhaustion provision of the IDEA "applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA."

8

Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir.2000). It is settled First Circuit law that plaintiffs who bring an IDEA-based claim under § 1983 in which they seek only monetary damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court. Frazier, 276 F.3d at 64. It is of no consequence that the Plaintiff has graduated from high school. Id. at 63.

The Complaint alleges that the Defendants are liable for failing to establish a policy for addressing the Plaintiff's needs, failing to identify her as suffering from a disability or referring her to evaluation to determine if she had a disability, and failing to make a reasonable accommodation of her disability by providing an Individual Education Plan. Complaint, para. 73. The Plaintiffs do not allege exhaustion of administrative procedures in the BSEA, nor do they allege any recourse to administrative procedures which were available to them. On information and belief, the Plaintiffs did not exhaust these administrative procedures prior to filing suit. The Plaintiffs seek to avoid the dispositive consequences their failure to comply with applicable federal law by casting their claim as a deprivation of civil rights under § 1983. The Plaintiffs attempt to escape the impact of their failure to satisfy their administrative obligations is unavailing.

In Frazier v. Fairhaven School Committee, a case procedurally and legally similar to the present case, a former high school student and her parents sued public school defendants for monetary damages under § 1983 based on a claimed violation of the IDEA. 276 F.3d 52 (1st Cir.2002). The plaintiffs argued that because their complaint relied upon § 1983 rather than IDEA directly, and because they sought only monetary relief not available under the IDEA, they were not required to exhaust the administrative remedies of the IDEA prior to filing suit in federal district court. Id. at 59-60. As a matter of first impression, the Court held that "plaintiffs who bring an

9

IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court." Id. at 64. The Frazier's Court's holding was based partially on the fact that "the administrative process facilitates the compilation of a fully developed record by a factfinder versed in the education needs of disabled children - and that record is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain." Id. at 61.

Though the Plaintiffs would use § 1983 as a vehicle for alleging that the Defendants violated the IDEA, they cannot evade the administrative requirements of IDEA which are a prerequisite to filing suit. The Plaintiffs do not allege, nor can they prove that they exhausted the administrative process under the IDEA before filing suit. The Plaintiffs did not file a complaint in the BSEA nor did they participate in a due process hearing prior to filing this civil action. See 20 U.S.C. § 1415(b)(6), (g) and (f). Accordingly, the Court should dismiss Count I .

> 2.   The Plaintiffs Cannot Prove An Actionable Deprivation Of Procedural Due Process Because Massachusetts Law Provided An Adequate Post Deprivation Remedy For The Deprivation Alleged.

The Plaintiffs cannot prevail on a claim based on alleged deprivation of procedural due process arising out of negligent failure to afford benefits to the Plaintiff under IDEA because there was available under Massachusetts law a means of registering a Complaint with the BSEA which would provide a hearing, had means to order relief, and afforded recourse to court to persons unsatisfied by the state administrative outcome. The Plaintiffs' procedural due process claim is barred by the availability of an adequate state post deprivation remedy.

It is well settled in law that a procedural due process claim is not actionable unless the claimant can show that "no adequate 'post-deprivation remedy' is available under state law." Cronin

10

v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996); See Parratt v. Taylor, 451 U.S. 527, 101 S.
Ct. 1908 (1981); Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992). This tenet, known as the
"Parratt-Hudson doctrine," has been summarized by the First Circuit as follows:

> When a deprivation of a property interest is occasioned by random and unauthorized conduct
> by state officials, . . . the [Supreme] Court has repeatedly emphasized that the due process
> inquiry is limited to the issue of the adequacy of post-deprivation remedies provided by the
> state.

Lowe, 959 F.2d at 340-341. Thus, if a state provides adequate post-deprivation remedies -- either
by statute or through the common-law tort remedies available in its courts -- no claim of a violation
of procedural due process can be brought under § 1983 against the state officials whose random and
unauthorized conduct caused the deprivation. Lowe, 959 F.2d at 340-41; Perez-Ruiz v. Crespo-
Guillen, 25 F.3d 40, 42 (1st Cir. 1994). There is "no denial of procedural due process, even by the
official," where the prerequisites of random and unauthorized conduct and adequate post-deprivation
remedies are met. O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000) quoting Herwins v. City of
Revere, 163 F.3d 15 (1st Cir. 1998).

There can be no material dispute that Massachusetts law provided the Plaintiffs with means
for administrative and then judicial review of any deprivation of Ms. Voller's rights under IDEA.
The Plaintiffs could have filed a complaint with the BSEA and obtained a hearing on their
complaints, but did not do so. The availability of a state law procedure which afforded the Plaintiffs
the opportunity of judicial review of the denial of her alleged rights precludes recovery based on any
alleged deprivation of procedural due process by the Defendants.

> 3.    The Court Should Dismiss Count I Because Mere Allegations Of Negligence
>       Cannot Support A Claim Under § 1983.

The Court should dismiss Count I because its allegations of mere negligence do not state a

claim for civil rights violations for which the Defendants can be liable under § 1983. Because the allegations amount to no more than alleged negligence compensable, if at all, under the Massachusetts Tort Claims Act, the Court should dismiss Count I.

The Supreme Court has ruled that merely negligent actions or omissions of state officials do not "deprive" an individual of life, liberty or property within the meaning of the Fourteenth Amendment and are not actionable under § 1983. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662 (1986); Germany v. Vance, 868 F.2d 9 (1st Cir. 1989). "The due process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life liberty or property." Daniels v. Williams, 474 U.S. at 328, 106 S.Ct. at 663.

The Plaintiffs have alleged no more than negligence by the Defendants in the trappings of a civil rights violation in order to availing themselfs of remedies not available under applicable law. Section 1983 does not provide a catch all federal tort to provide additional relief to common law tort claimants who may be dissatisfied by the measure of potential relief afforded by applicable state law. Accordingly, the Court should dismiss Count I.

4.    The Natural Person Defendants Are Entitled To Qualified Immunity.

Even if the Plaintiffs have asserted a viable claim of liability by reason of alleged deprivation of rights ensured to Ms. Voller by IDEA, which the Defendants deny, each natural person Defendant is entitled to qualified immunity to state and federal civil rights laws because each acted objectively reasonably in light of clearly established law. The Court should dismiss the civil rights claims against all natural person Defendants.

The doctrine of qualified immunity provides that "government officials performing

12

discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (1st Cir. 1997). Qualified immunity is designed to winnow out insubstantial claims and protect public officials from "broad-ranging discovery that can be peculiarly disruptive of effective government." Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987). Defendants asserting qualified immunity are shielded if either of the following holds: (1) the federal law allegedly violated was not clearly established at the time of the alleged violation or (2) the defendants' alleged actions with regard to applying or following such clearly established law were objectively reasonable. See Vargas-Badillo, 114 F.3d at 5.

The standard for judging a motion by a government official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). The focus should be not on the merits of plaintiff's underlying claim, but instead on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and information the official possessed at the time of the allegedly unlawful conduct. Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995); Febus-Rodriguez, 14 F.3d at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger, 50 F.3d at 65.

As argued above, the Plaintiffs' failure to exhaust, or even initiate mandatory administrative procedures under IDEA precludes recovery against all Defendants under § 1983 and M.G.L. c. 12, §11I. The natural person Defendants are immune because no clearly established federal law

13

precluded errant exposure to generally innocuous substances to which the particular student is allergic. Ms. Bridges and Dr. Chuckran reasonably could have believed that their actions were lawful in light of clearly established law when they allegedly mistakenly used or permitted to be used sulfurous substances routinely used in a high school chemistry class. The other natural defendants are alleged only to have failed to respond to the Plaintiffs' requests for communication. Because the natural person defendants could reasonably have believed that they were acting lawfully and were not violating federal law by their actions, the Court should dismiss Counts I and III against them.

C.    THE COURT SHOULD DISMISS COUNT III BECAUSE THE COMPLAINT DOES NOT ALLEGE AN INTERFERENCE WITH MS. VOLLER'S CIVIL RIGHTS BY MEANS OF THREATS, INTIMIDATION OR COERCION.

The Court should dismiss Count III of the Complaint because the Plaintiffs have not stated a claim in Count III upon which relief can be granted. In order to prevail on a claim under the MCRA, a plaintiff must plead and prove that:

> (1) his exercise or enjoyment of right secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.

Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (quoting M.G.L. ch. 12, § 11I). Leaving aside the first two prongs of the test, the Plaintiffs clearly fail to satisfy the third prong because the Complaint does not allege, nor can the Plaintiffs prove that the Defendants interfered, or attempted to interfere with Miss Voller's rights by means of threats, intimidation or coercion.

In the context of the MCRA, the Supreme Judicial Court of Massachusetts has held that "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of

14

injury. See Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994). "Intimidation" involves putting one in fear for the purpose of compelling or deterring conduct. See id. "Coercion" involves the application of such force, either physical or moral, to constrain him to do against his will something he would not otherwise have done. See id. The Supreme Judicial Court has declared that proof of an actual or potential confrontation accompanied by a threat of harm is an essential element of a claim under the Act. See id. at 473, 631 N.E.2d at 989; see also Bennett, 230 F.Supp.2d at 228, citing Carvalho v. Town of Westport, 140 F.Supp.2d 95, 100-01 (D.Mass.2001).

Not every alleged violation of law is a violation of the MCRA. See Longval v. Commissioner of Correction, 404 Mass. 325, 332 (1989). The Defendants' conduct relative to Ms. Voller were direct acts and were not done to coerce Ms. Voller to do or not to do anything. "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 781 (1987).

The Plaintiffs do not allege, nor can they prove, that any of the Defendants used threats, intimidation or coercion to interfere with Ms. Voller's protected rights. The Complaint contains no allegation of a physical confrontation accompanied by a threat of harm between any of the Defendants and Ms. Voller. Discussions between counsel for the parties pursuant to Local Rule 7.1 revealed that the Plaintiffs would rely on the allegation in paragraphs 51-53 that Defendant Bridges told Ms. Voller that if she left the classroom during an examination to consult with the school nurse concerning a nosebleed, her (incomplete) test paper would be invalid. Complaint, paras. 51-53. Assuming for purposes of this motion that this allegation can be proved, the statement attributed to

15

Ms. Bridges cannot reasonably be considered an intentional exertion of pressure to make Ms. Voller fearful or apprehensive of injury. The Complaint suggests that Ms. Bridges actually "sent" Ms. Voller to the nurse. Complaint, para. 50. The allegations of the Complaint make clear that even if Ms. Bridges intended to exert pressure on Ms. Voller not to leave the classroom, after Ms. Voller was "sent to the school nurse" (presumably by Ms. Bridges), this alleged statement did not deter Ms. Voller from seeing to the nurse. Complaint paras 50, 51. Ms. Bridges's alleged effort to deter Ms. Voller's trip to the nurse did not interfere with any clearly established right by means of threats, intimidation or coercion. No other allegation of the Complaint comes conceptually near to alleging interference by threats, intimidation or coercion. Accordingly, the Court should dismiss Count III.

D.    THE COURT SHOULD DISMISS COUNTS II AND IV AS THEY CONCERN ALL OF THE NATURAL PERSON DEFENDANTS BECAUSE NONE CAN BE LIABLE FOR NEGLIGENCE WITHIN THE SCOPE OF HIS EMPLOYMENT.

The Court should dismiss Counts II and IV of the Complaint to the extent that each Count purports to allege liability for negligence against Bette Bridges, David Chuckran, Ronald Gerhart, Stephen Heaslip and William Barber because none can be held liable for negligence within the scope of their employment as a matter of law. The Complaint alleges that each of the natural person defendants was, at all relevant times, employed by the Bridgewater Raynham Regional School District. Complaint paras. 5-9. The Bridgewater Raynham Regional School District is expressly alleged to be a public employer as that term is used in the Massachusetts Tort Claims Act. Complaint, para. 4. All natural person Defendants are alleged to have acted, at all times material, within the scope of their employment by the Bridgewater Raynham Regional School District. Complaint, para. 10. Accordingly, Counts II and IV cannot state a claim for which relief can be granted and the Court should dismiss Counts II and IV.

16

Under the Massachusetts Tort Claims Act, public employees are immune to liability for negligence, wrongful acts or omissions while acting within the scope of their employment. M.G.L. c. 258, § 2; Petricca v. City of Gardner, 194 F.Supp.2d 1, 4 (D.Mass.2002); Taplin v. Town of Chatham, et al., 390 Mass. 1, 2 (1983). At all relevant times, the natural person Defendants are alleged to have been acting within the scope of their employment for a public employer. See M.G.L. c. 258, § 1. Because the alleged negligence of the Defendants allegedly occurred when they were acting within the scope of their employment, the Defendants are immune to liability. Accordingly, the Court should dismiss Counts II and IV of the Complaint against the natural person Defendants.

E.     THE COURT SHOULD DISMISS COUNT V BECAUSE IT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Court should dismiss the Plaintiffs' claim against Defendant Bridgewater Raynham Regional School District for intentional infliction of emotional distress because a public employer cannot be held liable for the alleged intentional torts of its employees. The Court should dismiss the Plaintiffs' claim against the natural person defendants for intentional infliction of emotional distress because the Complaint does not allege the level or type of shocking and outrageous conduct by the Defendants necessary to prevail on such a claim.

In order for the Plaintiffs to succeed on their claim alleging intentional infliction of emotional distress, they must plead and prove that the Defendants (1) intended to inflict emotional distress, (2) in a manner amounting to extreme and outrageous conduct, beyond all possible bounds of decency and utterly intolerable in a civilized community (3) to cause them severe emotional distress, and (4) the emotional distress suffered by the Plaintiffs was severe and of such a nature that no reasonable person could be expected to endure it. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass.

17

456, 466 (1997); Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976); Restatement

(Second) of Torts, § 46. Conduct considered extreme and outrageous must be "so outrageous in

character and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and intolerable in a civilized community." Mello v. Stop & Shop, 402 Mass.

555, 562-63 (1988); Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). Liability cannot be

predicated upon:

> "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," nor is it enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; rather, [l]iability has been found only where the conduct has been found so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Foley, 400 Mass. at 99; Restatement (Second) of Torts, § 46.

Notwithstanding of the Plaintiffs' rote recitation of the elements of such a claim in

conclusory fashion, the Complaint alleges no conduct which can support liability on this cause of

action. The Complaint makes no specific allegations concerning the conduct of Defendants Gerhart

(superintendent), Mr. Heaslip (principal), or Mr. Barber (guidance counselor) other than that they

did not respond to Ms. Voller's parents' alleged effort to communicate. In substance the Complaint

alleges that Defendants Bridges and Chuckran caused Ms. Voller to be exposed to sulfurous

substances by taking inadequate precautions to rid the chemistry lab of the noxious substance and/or

to adequately warn the Plaintiffs when such substances might be present. Even assuming that the

Plaintiffs' allegations with respect to Ms. Bridges and Dr. Chuckran are true, which the Defendants

deny, their actions or inactions cannot reasonably be said to have been "so outrageous in character

18

and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and intolerable in a civilized community." Mello, 402 Mass. at 562-63. There is no allegation of "profoundly shocking" conduct by either Ms. Bridges or Dr. Chuckran and, accordingly, the Court should dismiss Count V as against all the Defendants.

Defendant Bridgewater Raynham Regional School District cannot be held liable for intentional infliction of emotional distress as a matter of law. M.G.L. c. 258, § 10(c). Accordingly, the Court should dismiss Count V as it concerns Bridgewater Raynham Regional School District.

F.    THE COURT SHOULD DISMISS COUNT VII AGAINST DEFENDANTS BRIDGES AND CHUCKRAN BECAUSE IT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Court should dismiss Count VII of the Complaint, which purports to state a claim against Defendants Chuckran and Bridges for assault and battery. The Complaint does not allege, nor can the Plaintiffs prove that Dr. Chuckran or Ms. Bridges intended to cause a harmful or intentional contact with Ms. Voller.

Under Massachusetts law, assault and battery is an intentional tort subjecting an actor to liability if (1) he acts intending to cause a harmful or offensive contact with the other person, or an imminent apprehension of such a contact, and (2) a harmful contact with the other person directly or indirectly results. See Waters v. Blackshear, 412 Mass. 589, 590 (1992) citing Restatement (Second) of Torts, § 13 (1965). Blackshear also held that "a result is intended if the act is done for the purpose of accomplishing the result or with knowledge that to a substantial certainty such a result will ensue." 412 Mass. at 590-91.

The Plaintiffs do not allege, nor can they prove that Ms. Bridges or Dr. Chuckran had the

19

requisite intent to establish a *prima facie* case of assault and battery. There is no allegation that either of these Defendants intended to cause Ms. Voller to come into contact with sulfurous materials, beyond their presumed intention to use those materials as part of the chemistry class curriculum. Since the Plaintiffs has not alleged a *prima facie* case of assault and battery against either Ms. Bridges or Dr. Chuckran, the Court should dismiss Count VII.

## IV.    CONCLUSION

For the reasons stated above, the Defendants respectfully move the Court to dismiss all Counts of the Complaint.

The Defendants,
By their attorneys,

William P. Breen, Jr., Esq., BBO #558768
Rebecca L. Andrews, Esq., BBO #644846
MURPHY, HESSE, TOOMEY & LEHANE, LLP.
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 22nd day of June 2005, he served a copy of the foregoing document, via first class mail, upon the following:

David J. Paliotti, Esq.
Greenbaum, Nagel, Fisher & Hamelburg
200 High Street, 4th Floor
Boston, MA 02110

William P. Breen, Jr.

21